IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHARLES JOHNSON,<br>　　　　Plaintiff, | * |
| | * |
| v. | CIVIL ACTION NO. JFM-06-85 |
| | * |
| W. B. BRADLEY, et al.,<br>　　　　Defendants. | * |

******

## MEMORANDUM

On January 11, 2006, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983 seeking money damages. Counsel for defendants filed a Motion to Dismiss which was granted as to Defendants Baltimore City Police Department and the Mayor and City Council of Baltimore. Currently pending is a Motion for Summary Judgment filed on behalf of individually named defendants Bradley, Hayden, Hergenroeder, Rose, Stach, Pegues, and Stein. Paper No. 28. Plaintiff has not filed a response.[1]  No hearing is needed to resolve the pending motion, which will be granted in part and denied in part. *See* Local Rule 105.6 (D. Md. 2004).

### 1. Factual Background

According to the undisputed records before the court, on August 14, 2003, at approximately 2:35 p.m., an undercover officer from the Baltimore City Police Department entered the area of 1800 Eager Street to make a controlled purchase of narcotics. *Id.*, Ex. A.. The officer met a black male later identified as Mr. Dickey and asked what drugs were available. Dickey replied that heroin and cocaine were available, and the officer asked to purchase heroin. Dickey then directed the officer down the street to a black male wearing a white t-shirt, khaki shorts, and a pink baseball cap, later

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on July 3, 2007, plaintiff was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 29. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

identified as plaintiff Charles Johnson. The officer approached plaintiff who asked if the officer wanted heroin. The offer asked to purchase four "nickels" of heroin. *Id*. Plaintiff then walked south to 900 Durham Street to another black male later identified as James Taylor. Taylor handed Plaintiff a plastic bag containing small white objects consistent with the appearance of heroin. Plaintiff returned to the undercover officer and handed him four gel caps of suspected heroin in exchange for pre-recorded currency. *Id*.

The officer left the area and advised the arrest team of all of the suspects involved in the transaction, including their descriptions and locations. *Id*. During his deposition, plaintiff admitted that at the time of his arrest he was wearing a white t-shirt and a baseball cap. *Id*., Ex. B, p. 79-80.

As previously summarized by the court, in his complaint plaintiff states that on August 8, 2003, while walking down Madison Street in Baltimore City, Maryland, to pick up his daughter from day care, he "was violently tackled from behind" by the individually-named defendants, employees of the Baltimore City Police Department. He states that he was thrown to the ground with sufficient force to cause lacerations to his face and dislocation of his elbow. He was placed under arrest and transported to the Central Booking Inmate Facility, where he was denied medical care for his injuries for several hours. Paper No. 1. During his deposition, plaintiff maintained that he was tackled by one of the arresting officers. Plaintiff stated that he did not see a car pull up, he "didn't see anything. Only thing I seen was me hit the ground and me urinating on myself because I was tackled from behind. That's all I seen." Paper No. 28, Ex. A, p. 20. Later in his deposition, plaintiff stated, "One officer tackled me. But two officers, one officer placed his knee on my neck, on the back of my neck once my face was already in the dirt. One officer pulled my arm in back of me, putting the handcuffs on me and then I was picked [up] and placed under arrest." *Id*., p. 93. He later clarified to say that his face was not in the dirt but on the concrete sidewalk. *Id.* Defendants offer no alternative version of plaintiff's arrest, but rather recharacterize the actions of the arresting

2

officer as doing, "no more than approach[ing plaintiff] from behind, wrap[ping] his arms around the Plaintiff anc use[ing] his shoulder to push the Plaintiff to the ground." Paper No. 28, p. 10.

After his arrest, plaintiff was transported to Mercy Medical Center for evaluation. According to his discharge instructions,[2] he was diagnosed as suffering from a sprained elbow, provided Motrin, instructed to ice his elbow twice daily, and told to follow up with his own physician. Paper No. 28, Ex. D. Plaintiff has provided further evidence that while incarcerated he continued to suffer pain from the injury to his elbow. Paper No. 18.

## 2. **Standard of Review**

"[S]ummary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211, 214 (4th Cir. 1993) (citations omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986). "In ruling on a motion for summary judgment, a court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor." *See Estate of Kimmell v. Seven Up Bottling Co.*, 993 F.2d 410, 412 (4th Cir.

---

[2]Neither party has provided the court complete medical records resulting from plaintiff's evaluation at Mercy Medical Center. Defendants have relied solely upon the discharge instructions which plaintiff had previously provided to the court.

1993) (citation omitted).

### 3. **Analysis**

*A.     False Arrest*

In order to state a claim under §1983 for false arrest plaintiff must show that the arrest was made without probable cause. *See Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974). Probable cause exists if "at that moment the facts and circumstances with [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citation omitted). A probable cause determination is governed by a totality of the circumstances test. *See Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Garcia*, 848 F.2d 58 (4th Cir.) Whether probable cause to arrest existed is based on information the police had at the time of the arrest. *Id.* A warrantless arrest in a public place may be made when the arresting officers have probable cause to believe that the suspect has committed, is committing, or is about to commit a crime. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (probable cause exists if "at that moment the facts and circumstance within [the officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.").

In the instant case, the arresting officers were responding to the report of an undercover officer regarding a controlled drug purchase. Given that plaintiff was in the vicinity of the drug purchase and wearing clothing that matched the description of the suspect as relayed by the undercover officer and contained in the statement of probable cause, his arrest was supported by sufficient probable cause. Because plaintiff may only succeed on his claim of false arrest if he is able to demonstrate that the defendant police officer lacked probable cause to arrest him, and as he has failed to do so, summary judgment for defendants on this claim is appropriate.

B.     *Excessive Force*

As this court has previously summarized, claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id*.

Plaintiff states he was walking down the street when he was tackled from behind by defendants. He states that he was struck with such force that he urinated on himself. There is no doubt he was transported to the emergency room for evaluation shortly after his arrest where he was diagnosed as suffering from a sprained elbow. Defendants have once again, failed to counter plaintiff's version of events. Rather, defendants contend that the take down of plaintiff on a public street was "standard arrest technique" and "far from excessive" in light of plaintiff's being suspected of participating in drug activity. Paper No. 28, p. 10. Defendants contend in their memorandum (not in an affidavit supported by facts) that they used no more force than was necessary to subdue and arrest plaintiff. This court does not agree, inasmuch as defendants have failed to provide any affidavits from the arresting officers explaining why they felt compelled to tackle plaintiff from behind rather than issue a verbal command to stop and submit to a lawful arrest. Under these circumstances, the court cannot say that the force used to effectuate plaintiff's arrest was not excessive.

B.     *Qualified Immunity*

5

The officers' claim that they are entitled to qualified immunity also fails. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a government official is entitled to qualified immunity however, "[courts] must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable offic[ial] would have understood that the conduct at issue violated the clearly established right." *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *S. P. v. City of Tacoma Park*, 134 F.3d 260, 265 (4th Cir. 1998)); *see also Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998).

The first prong of the test is readily discernable: plaintiff alleges that his right to be free from the excessive use of force was violated. In determining the second prong -- whether that right was clearly established at the time of the arrest – the court must determine whether "the contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Tackling an unsuspecting individual from behind on a public street without cause as alleged by plaintiff appears to violate that individual's Fourth Amendment rights. The third prong of the qualified immunity analysis, reasonableness, is an objective standard. *See Anderson v Creighton*, 483 U.S. 635, 638 (1987). The proper inquiry is whether a reasonable officer could have believed the application of force was lawful. *Id.* at 641. Under the facts of this case, the court does not find the conduct of the individual defendants to be reasonable under the circumstances.

### 3. Conclusion

For the reasons stated above, defendants' motion for summary judgment shall be granted as to plaintiff's claim regarding unlawful arrest and denied as to plaintiff's claim of excessive force.

Plaintiff shall be granted twenty days to move for appointment of counsel. A separate Order follows.

October 9, 2007  /s/
Date  J. Frederick Motz
 United States District Judge